UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:26-cv-00130-LEW |
| | ) | |
| NORTHEASTERN | ) | |
| UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW
OF PLAINTIFF'S COMPLAINT**

Plaintiff alleges that Defendants—a university, two affiliated residential property companies, and twelve employees of the university and businesses—breached contracts, committed multiple torts against her, discriminated and retaliated against her based on a disability, and conspired to deprive her of her civil rights. (Complaint, ECF No. 1). With her complaint, Plaintiff filed an application to proceed without prepayment of fees, (Application, ECF No. 8), which application the Court granted. (Order, ECF No. 10.) In accordance with the statute governing actions filed without the prepayment of fees, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2).

Following a review of Plaintiff's complaint, for the reasons explained below, I recommend the Court dismiss the matter unless Plaintiff amends the complaint to address the deficiencies in the complaint discussed herein.

**LEGAL STANDARD**

28 U.S.C. § 1915 is designed to ensure meaningful access to the federal courts for individuals unable to pay the cost of bringing an action. When a party is proceeding without prepayment of fees, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Solutions*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

## FACTUAL ALLEGATIONS[1]

Plaintiff, a foreign national with a student visa, was admitted to a higher education program at Defendant Northeastern's (Northeastern) Roux Institute in Portland, Maine, and she arrived in the United States on January 5, 2024. (Complaint ¶¶ 23, 49.) According to Plaintiff, in connection with her application and enrollment, Northeastern represented that certain funds and support services would be operative when she arrived in the United States, but the funds were not available as Plaintiff expected. (*Id*. ¶ 49.) On January 8, 2024, a university official certified Plaintiff's immigration-related I-20 form, which form contained a financial section listing expected costs and funding, including a loan and a scholarship. (*Id.* ¶¶ 2, 49.)

The loan funds referenced on the I-20 form were not disbursed until October 4, 2024, nine months after Plaintiff arrived. (*Id.* ¶ 49.) Because the student visa program did not permit outside employment, Plaintiff experienced financial hardship between January and October 2024, including food insecurity. (*Id.* ¶ 54.)

In February 2024, when two employee defendants met with Plaintiff, one of the employees pressured Plaintiff to secure additional external loan funding and accused her of entering the United States illegally and of fraudulently obtaining her student visa. (*Id.*

---

[1] The facts are derived from Plaintiff's complaint.

¶ 50.)  The employee demanded that Plaintiff sign inaccurate financial attestations to be used for a credit application, but Plaintiff refused.  (*Id.* ¶ 51.)[2]

In the spring of 2024, Plaintiff was enrolled in two computer science courses at the Roux Institute.  (*Id.* ¶ 79.)  Plaintiff asserts that one of the employee defendants was one of her instructors, that the instructor lacked the proper credentials to teach the course, that six weeks before the end of the term, the instructor told Plaintiff in front of another employee that she should "prepare to fail," that he refused to grade her submitted work, and that he assessed Plaintiff a failing grade.  (*Id.*)  Plaintiff asserts that the two other employee defendants failed to address the situation properly.  (*Id.* ¶¶ 79–80.)

Plaintiff complained in writing about the delay in disbursing her loan.  (*Id.* ¶ 52.) Plaintiff asserts that her account was sent to collections, but in August 2024, two other employee defendants told Plaintiff that her account had not been referred to collections and authorized a credit to Plaintiff's billing account corresponding to the cost of spring and summer 2024 housing and tuition.  (*Id.*)

In September 2024, the university assigned Plaintiff to one bedroom of a two-bedroom apartment in a building located at 144 State Street, Portland, Maine, which was owned or operated by Defendant Redfern, LLC.  (*Id.* ¶¶ 69–70.)  A roommate was assigned to the other bedroom in the unit.  (*Id.*)  Plaintiff requested immediate transfer because she alleged that the single small non-operable window was below the natural light requirements

---

[2] It is not clear from the complaint when the meeting occurred.  Plaintiff alleges that it occurred six weeks into her educational program, but she did not describe when the program began or specify when she started attending classes.

under the city's code, the closet was too narrow to accommodate standard clothes hangers, and there was an insect infestation. (*Id.*)

Around the same time, Plaintiff evidently began attending classes in Boston, Massachusetts, where Northeastern's main campus is located, rather than at Northeastern's Roux Institute, in Portland. (*Id.* ¶ 53.) Because she could not secure housing in Boston, she had to commute twelve to eighteen hours each week. (*Id.*) Plaintiff informed one of the employee defendants that she was experiencing significant stress from the commuting, but the employee took no action to support Plaintiff. (*Id.*)

On December 2, 2024, Plaintiff fell at the apartment building, sustained a traumatic brain injury (TBI), and sought emergency care. (*Id.* ¶¶ 55, 58, 100.) On December 3, 2024, Plaintiff notified her academic advisor, professors, and university housing management of the injury and provided a medical note prescribing bedrest. (*Id.* ¶ 60.) Plaintiff had extensive bruising on her right side, had difficulty standing without support, experienced dizziness if she walked more than a short distance, had fluctuating vision and eye strain, and had difficulty concentrating without disproportionate effort. (*Id.* ¶ 58.) Plaintiff contends that university officials should have conducted a welfare check and activated support systems, including directing her to appropriate medical facilities. (*Id.* ¶¶ 60, 63.)

On December 20, 2024, Plaintiff requested temporary disability accommodations from the university's Disability Access Services for permission to take one of her exams remotely or in a location closer to her Portland residence. (*Id.* ¶ 82.) When the disability office denied the requests, Plaintiff was required to travel from Portland to Boston and sit for the examination with a bandaged leg and post-concussive symptoms. (*Id.*)

5

On December 23, 2024, Plaintiff submitted other documentation and formal disability accommodation requests through the university's Disability Access Services. (*Id.* ¶ 61.)  Plaintiff did not describe the accommodations she requested, but she asserts that her medical provider "prescribe[ed] housing stability as medically necessary" during recovery from the TBI.  (*Id.*)

Plaintiff began coordinated neurological care at the nearest medical center on January 31, 2025.  (*Id.* ¶ 63.)  An MRI and a neurological evaluation confirmed a traumatic brain injury and post-concussive deficits in processing speed, memory, executive function, and attention.  (*Id.* ¶ 59.)  Because 144 State Street is located a short walk from a major medical facility, Plaintiff's medical "providers viewed housing stability at that address as medically necessary to ensure continuity of her neurological treatment[.]"  (*Id.* ¶ 64.)  One of the employee defendants granted a housing accommodation in writing.  (*Id.*)

At or around the same time, in late 2024 or early 2025, there was some kind of "incident" involving a threat and Plaintiff and her roommate.  (*Id.* ¶ 86–87.)  The roommate filed a police report and sent photographs of Plaintiff's kitchen utensils after being encouraged to do so by two of the employee defendants.  (*Id.* ¶ 86.)  On February 24, 2025, Plaintiff's roommate moved out of the apartment.  (*Id.* ¶¶ 70, 85.)  On February 28, 2025, the roommate withdrew from participation in the disciplinary process because she had already moved out and saw no reason to engage further in the process.  (*Id.* ¶ 89.)

On March 3, 2025, Plaintiff requested reduced housing fees under a university policy for unexpected medical expenses.  (*Id.* ¶ 85.)  On the same date, Plaintiff requested a transfer to the empty room.  (*Id.* ¶ 70.)  Plaintiff asserted that the other room would reduce

her housing costs and the additional natural light from a larger window was needed for her TBI recovery.  (*Id.*)  Plaintiff implies that the housing fee reduction request was later denied, but she did not allege when the denial occurred or who was involved in the decision. Plaintiff alleges that the room transfer request was later denied, but she did not allege when the denial occurred or who was involved in the decision.  (*Id.*)

On March 5, 2025, two employee defendants provided other internal university authorities with their views of what constituted an armed and dangerous tenant, and the university initiated disciplinary charges against Plaintiff for having dangerous weapons and for endangering behavior.  (*Id.* ¶¶ 86–87, 89.)  On March 6, 2025, Plaintiff received notice that the Office of Student Conduct and Conflict Resolution had opened a disciplinary investigation based on the alleged conflict with the former roommate.  (*Id.* ¶ 85.)

On March 10, 2025, the housing office at the university sent Plaintiff a notice to vacate setting an April 30, 2025, move-out date.  (*Id.*)  On April 28, 2025, Plaintiff filed a complaint with the Maine Human Rights Commission (MHRC).[3]  (Complaint ¶ 139.) Northeastern suspended enforcement of the notice to vacate while the MHRC proceeding was active.  (*Id.* ¶ 140.)  Plaintiff withdrew the MHRC complaint on September 16, 2025. (*Id.*)

A different employee defendant oversaw the disciplinary proceedings, which Plaintiff asserts were conducted improperly.  (*Id.* ¶ 91.)  In August 2025, the employee found insufficient information to establish that a threat had existed and found Plaintiff not

---

[3] Plaintiff did not attach a copy of the complaint or describe the subject or content of the complaint.

responsible for dangerous weapons or for endangering behavior, but the employee required Plaintiff to complete a Living with a Roommate module.  (*Id.*)[4]  Plaintiff alleges that the requirement operated as a sanction and a registration block preventing her from enrolling in courses for subsequent semesters.  (*Id.*)  Plaintiff appealed; another employee found factual inaccuracies and concluded that the investigation should be reassigned, but the directive was ignored.  (*Id.* ¶ 92.) Plaintiff completed the module under protest in November 2025 so that the registration block would not prevent her from registering for spring classes.  (*Id.* ¶ 94.)

In October 2025, Defendant Redfern and one of the university employee defendants conducted a health and safety inspection of the apartment.  (*Id.* ¶ 93.)  Plaintiff allowed the Redfern employee to enter, but Plaintiff refused entry to the university housing office employee.  (*Id.*)  The inspector found no issues or problems.  (*Id.*)  Plaintiff argues that the inspection result refutes the university's prior assertion of a safety risk.  (*Id.*)

In November 2025, Northeastern asserted that the scholarship previously listed on her immigration-related I-20 form had been canceled due to a campus transfer.  (*Id.* ¶ 56, 185.)  Plaintiff contends that the decision was unlawful or improper because she had insufficient notice and because it was listed on the I-20 form signed by a university employee.  (*Id.* ¶ 56–57.)

---

[4] Plaintiff alleges that she was "exonerate[ed] on all serious charges," (*id.* ¶ 144), and while Plaintiff might also dispute other aspects of the employee's findings, Plaintiff does not appear to allege that the employee found no violations or no basis to require the training module.

8

On December 15, 2025, Plaintiff alleges that the heat in the apartment unit ceased operating for six days. (*Id.* ¶ 72.) Someone entered the apartment unannounced on December 15, 22, and 23, 2025. (*Id.* ¶¶ 153, 213.) On December 18, 2025, the Redfern employee defendant issued Plaintiff a notice to vacate. (*Id.* ¶¶ 35, 73.) On December 21, 2025, the city code enforcement office sent Defendant Redfern a remediation order concerning "habitability violations," (*id.* ¶ 157), but Plaintiff does not allege any details regarding the content of the communication. On December 22, 2025, Plaintiff wrote to the city code enforcement office requesting an unannounced inspection because she maintained that conditions changed temporarily when notice had been given to the property manager. (*Id.* ¶ 74.) On January 2, 2026, Plaintiff filed a motion for a temporary restraining order in Cumberland County Superior Court and had a hearing scheduled for later that month. (*Id.* ¶ 75.)

On January 12, 2026, using a master key, two employee defendants entered the apartment without Plaintiff's consent. (*Id.* ¶ 76.) Defendant Redfern deactivated Plaintiff's key fob access number mere minutes after the entry. (*Id.*) Defendant Redfern reactivated Plaintiff's key fob access later that day after some interaction with the city's code enforcement office. (*Id.*) Around 11:00 p.m. on January 13, 2026, Plaintiff returned to the apartment and found that her key fob access had again been deactivated. (*Id.*) On January 14, 2026, three of the employee defendants and other individuals under their direction entered the apartment and removed some or all of Plaintiff's personal property. (*Id.* ¶¶ 35, 77.) Plaintiff was given a bag with some of her personal items and medication, but according to Plaintiff, the bag did not contain all the medication that she needed. (*Id.* ¶

9

77.)  One of the employees asserted that their actions were not an eviction, but Plaintiff contends that the entry and conduct of the employees amounted to an unlawful eviction without a judicial order.  (*Id.* ¶ 76.)  Plaintiff did not allege whether or how long before she regained access to the apartment, or whether or how long before other items of her property were returned to her.[5]

### DISCUSSION

Plaintiff cites 42 U.S.C. § 1985(3) and alleges a conspiracy to violate her right to equal protection of the laws and privileges and immunities under the laws motivated by disability-related animus.  Because there was no state action involved in the alleged conspiracy, the claim fails because the alleged rights protect against government action and are not one of two rights the Supreme Court has recognized as protected against purely private action: "the Thirteenth Amendment right to be free from involuntary servitude and the right of interstate travel[.]"  *Snyder v. Talbot*, 836 F. Supp. 19, 25 (D. Me. 1993).  Furthermore, "the disabled are not a suspect class for equal protection purposes."  *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006).  Finally, even if such a claim could proceed, the complaint lacks sufficient facts to suggest a conspiracy or agreement or the requisite animus among the identified persons.

Plaintiff also asserts a related claim pursuant to 42 U.S.C. § 1986, which "extends liability to those who knowingly failed to prevent conspiracies under § 1985."  *Maymi v.*

---

[5] Plaintiff did not allege when or whether she moved elsewhere.  Plaintiff refers to the "January 12-14 lockout," which could suggest that her loss of access to the apartment and her personal property was limited to those days or could also suggest a progressive loss of access starting on January 12 and completing and becoming permanent on January 14.

10

*Puerto Rico Ports Authority*, 515 F.3d 20, 31 (1st Cir. 2008).  Because the § 1985 claim

fails, and "[b]ecause a § 1986 claim must be predicated upon a valid § 1985 claim,"

Plaintiff cannot proceed on the § 1986 claim.  *Grendell v. Maine*, No. 1:19-cv-00419-JDL,

2020 WL 3895765, at *5 (D. Me. July 10, 2020) (quotation marks omitted).

Plaintiff alleges that one of the employee defendants violated the Family Education

Rights and Privacy Act (FERPA) by disclosing her private educational information to

employees of the housing companies.  Even assuming the disclosure was improper, the

claim fails because Plaintiff has no enforceable cause of action for the alleged violation.

The statute only provides for enforcement by the Secretary of Education and does not

contain an express or implied private right of action or rights that can be enforced through

§ 1983.  *See Gonzaga University v. Doe*, 536 U.S. 273, 290 (2002).

The main federal claims in the complaint include an allegation of disability

discrimination.  Plaintiff claims the university and housing entities failed to provide a

reasonable accommodation for her disability after the December 2024 injury and retaliated

against her for requesting accommodations in violation of the Fair Housing Act (FHA),

Title III of the Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation

Act.[6]  There are several apparent obstacles to Plaintiff proceeding with the claims.

To state a reasonable modification/accommodation claim, a Plaintiff must show:

(1) the plaintiff is a person with a disability, (2) the defendant is covered by one of statutes;

---

[6] Although the different disability discrimination statutes have somewhat different wordings, courts often address them together when more than one applies because the "standards are generally the same under all three statutes[.]"  *Friedman v. Central Maine Power Co.*, No. 2:20-cv-00237-JDL, 2021 WL 1234638, at *2 (D. Me. Mar. 31, 2021).

11

(3) the defendant has a discriminatory policy or practice in effect; (4) the plaintiff requested a reasonable modification in that policy or practice which would have afforded the plaintiff access to the goods, services, or program; (5) that the modification was necessary to afford that access; and (6) that the defendant refused to modify the policy or practice. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307–08 (1st Cir. 2003).

As alleged, the disability discrimination statutes apply to the organizational defendants. Plaintiff also described symptoms and impacts to life activities immediately following the December 2024 injury and thus plausibly alleges a disability at that time. Plaintiff alleges several requests for modifications to policies or practices, but more facts are likely required to satisfy the plausibility standard for each requested modification/accommodation.[7] Moreover, while there could be some obstacles that Plaintiff would need to address to proceed on her claim, as discussed below, the form of the complaint makes it difficult to assess on initial review whether Plaintiff can plausibly show that any of the declined requests was reasonable and necessary.

Plaintiff also alleges a disability retaliation claim. To proceed on such a claim under the familiar burden shifting approach, (1) a plaintiff must show that he or she engaged in

---

[7] Plaintiff alleges (1) a request related to "housing stability" that was granted in late 2024 or early 2025 and again in September 2025 but then denied in December 2025, (2) a December 2024 request for remote testing that was denied, (3) a March 2025 request for reduced housing fees under a university program for unexpected medical bills that was denied, and (4) a March 2025 request to transfer to a room in the apartment for more natural light. The first request is the most prominent throughout the complaint but the least defined—the complaint does not specify what policy ordinarily governed the housing situation nor precisely what modification Plaintiff requested. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255–56 (11th Cir. 2001) ("The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [equal access]").

12

protected conduct, he or she was subjected to an adverse action by the defendant, and there was a causal connection between the protected conduct and the adverse action; (2) the burden then shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse action; and (3) the burden then shifts back to the plaintiff to show that the proffered legitimate explanation is pretextual, meaning that the defendant was motivated by a retaliatory animus. *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012). The First Circuit instructs that the prima facie case is not "a rigid pleading standard," *Rae v. Woburn Public Schools*, 113 F.4th 86, 109 (1st Cir. 2024) (quotation marks omitted), but the burden shifting framework and the prima facie case "may be used as a prism to shed light upon the plausibility of the claim." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

To show that she engaged in protected conduct, Plaintiff cites her accommodation requests. Courts have held that reasonable disability-related requests for policy modifications can constitute a protected activity for purposes of the disability discrimination statutes. *Akerson v. Pritzker*, No. CV 12-10240-PBS, 2021 WL 2295522, at *8 (D. Mass. June 4, 2021). The investigation of misconduct, the alleged failure to voluntarily take affirmative steps to assist Plaintiff, and the denials of her requests for fee waivers and other accommodations would likely not satisfy the adverse action requirement, s*ee Shervin v. Partners Healthcare System, Inc.*, 804 F.3d 23, 50 (1st Cir. 2015) (noting that adverse actions occur when there is significant conduct sufficient to deter a reasonable person from reporting discrimination); *Mullin v. Secretary, U.S. Department of Veterans Affairs*, 162 F.4th 1296, 1315 (11th Cir. 2025) (reasoning that if denial of accommodation

13

requests were adverse action, there would be no difference between retaliation claims and reasonable modification claims), but the alleged lockout from her apartment and the `imposition of a disciplinary sanction are likely sufficient. As noted above, there are few alleged facts upon which a factfinder could plausibly infer that a reasonable accommodation request was the but-for cause of the discipline or lockout.[8] The form and nature of the complaint make it difficult to assess on preliminary review whether Plaintiff can plausibly show the requisite causal connection.

Rule 8(a)(2) specifies that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Rule 12(f) authorizes motions to "strike from a pleading

---

[8] Temporal proximity between protected conduct and adverse action can support a plausible inference of causality, but it must be very close, *Calero-Cerezo v. U.S. Department of Justice*, 355 F.3d 6, 25 (1st Cir. 2004), and even close proximity can be insufficient "particularly if the larger picture undercuts any claim of causation." *Cordero Ayala v. United States Postal Service*, No. CV 20-1239 (MEL), 2024 WL 2199005, at *12 (D.P.R. Mar. 27, 2024) (quoting *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) (nested quotation marks omitted). Plaintiff alleges that much of the improper conduct against her occurred up to a year before she experienced any disability. After she experienced the injury, Defendants granted the most prominent accommodation request identified in the complaint—the unspecified housing stability request. Plaintiff made the remote testing request in December 2024 and the room transfer request in March 2025, while the discipline was not imposed until August 2025, and the lockout did not occur until January 2026.

Plaintiff alleges a closer temporal proximity between her complaints to city code enforcement and the lockout, but while complaints regarding violations of state laws or local ordinances could perhaps be protected under state law, they are not considered bases for an action under the FHA. *See Kummerow v. Ohawcha.org*, No. 21-CV-635-WMC, 2022 WL 873599, at *3 (W.D. Wis. Mar. 24, 2022) ("the [FHA] does not authorize plaintiff to sue defendants in federal court for claims related to the habitability of the . . . apartment. Instead, landlord-tenant law is traditionally the province of the states, meaning that plaintiff *may* have a remedy in state court, or in a state or federal administrative proceeding, concerning the conditions of his dwelling, but not in federal court") (citations omitted) (emphasis in original); *Atterbury v. Sanchez*, No. CV 11-4932 SI, 2012 WL 3638571, at *5 (N.D. Cal. Aug. 22, 2012) ("A landlord's actions that are based on a tenant's complaints" about property conditions "are not actionable as discrimination under the FHA").

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed. R. Civ. P. 12(f), or to dismiss the complaint." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). The justification for enforcing some degree of brevity and clarity through Rule 8(d) and Rule 12(f) is that when "[t]he complaint is prolix, disjointed, [or] replete with legal conclusions," it "'places an unjustified burden on the court and the party who must respond to it[.]'" *Miranda v. United States*, 105 F. App'x 280, 281 (1st Cir. 2004) (quoting Wright & Miller, Federal Practice & Procedure § 1281, at 522 (2d ed. 1990)).

Plaintiff's filing generates Rule 8 concerns. The pleading consists of 103 pages with 270 numbered paragraphs, many of which paragraphs are relatively lengthy and cover several topics or events that allegedly occurred across multiple days.[9] Of the facts that Plaintiff provided, many are difficult to locate and understand because they are not in sequential order and include legal conclusions and arguments. Unless Plaintiff were to amend the complaint to cure the deficiencies, it would be appropriate for the Court to order amendments or dismiss the complaint on that basis alone. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378–79 (7th Cir. 2003) (explaining that pleadings

---

[9] Courts have also dismissed complaints without prejudice "for failure to comply with Rule 10(b) where the complaint contains lengthy, disorganized paragraphs[.]" *Rosen v. Lieberman*, No. CV167341JLLJAD, 2018 WL 3159873, at *1 (D. N.J. Jan. 31, 2018) (quotation marks omitted).

must be concise and straightforward so that courts and adverse parties do not expend disproportionate resources searching for the few allegations that might matter).

The face of the complaint also raises jurisdictional questions and prudential obstacles to proceeding in federal court at this time because Plaintiff has evidently been pursuing another lawsuit in state court "to review precisely the conduct now at issue." (Complaint ¶ 75.)  Plaintiff alleges that she filed a lawsuit in Cumberland County Superior Court in January 2026 and that she had a hearing scheduled on a motion for a temporary restraining order.  If the lawsuit is still pending, it would likely be appropriate for the Court to dismiss the matter without prejudice based on the abstention doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).[10]  If the state court

---

[10] Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, but they are permitted to abstain in limited exceptional circumstances for reasons of "wise judicial administration that counsel against duplicative lawsuits."  *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (internal quotations omitted).  Courts examine the following non-exhaustive factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 71–72 (1st Cir. 2005).  Federal courts ordinarily do not exercise jurisdiction where a party attempts to raise claims in federal court based on the party's dissatisfaction with the course of a parallel state court case:

> In our view, it would be unthinkable that every time a state . . . court defendant became dissatisfied with that court's provisional resolution of some issue and there was [federal subject matter jurisdiction], it could rush over to the federal courthouse in the hope of obtaining a more favorable determination.  Such a practice, if ordinarily permitted, would complicate and fragment the trial of cases, as well as cause friction between state and federal courts.

*Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309–10 (1st Cir. 1986).

proceeding has reached final judgment, this Court would likely lack subject matter jurisdiction over some or all of Plaintiff's claims under the doctrine of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983),[11] and preclusion principles might bar some or all of the relief Plaintiff seeks.[12]

While dismissal is warranted for three of Plaintiff's alleged federal claims, because the complaint raises potential threshold barriers to Plaintiff's ability to proceed in this Court, and because the form of the complaint makes it difficult to complete the preliminary review process for the disability discrimination and retaliation claims, permitting Plaintiff the opportunity to amend the complaint before the Court determines whether dismissal of the entire matter is warranted would be appropriate.[13]

---

[11] "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In general, "the proper forum for challenging an unlawful state court ruling" is the state appellate system followed by a petition for review by the United States Supreme Court. *Davison v. Government of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006); 28 U.S.C. § 1257.

[12] The general rule of issue preclusion "is that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 148 (2015) (quotation marks and modifications omitted). Under the doctrine of claim preclusion, when a later suit "arise[s] from the same transaction . . . or involves a common nucleus of operative facts" as an earlier suit, "the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 412 (2020) (cleaned up).

[13] Plaintiff also alleges many contract-related claims, tort claims, and other state law claims. While there could be similar obstacles to proceeding on some or all the claims, I have not analyzed those issues because if the federal discrimination and retaliation claims are dismissed, the Court would not exercise supplemental jurisdiction over the alleged state law claims. *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice

## CONCLUSION

After a review of Plaintiff's complaint in accordance with 28 U.S.C. § 1915, for the reasons explained above, I recommend the Court dismiss the matter unless, on or before May 15, 2026, Plaintiff amends the complaint to address adequately the deficiencies in the complaint identified herein. Plaintiff, therefore, may file an amended complaint on or before May 15, 2026. If Plaintiff files an amended complaint on or before May 15, the Court will assess whether Plaintiff has through the amended complaint alleged any actionable claims.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of April, 2026.

---

of any supplemental state-law claims"). If Plaintiff files an amended complaint that contains enough facts for the Court to discern a plausible federal claim, the Court will then conduct a preliminary review of the state law claims.