UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JANE DOE,

Plaintiff,

v. Civil Action No. 2:26-cv-00130-LEW

NORTHEASTERN UNIVERSITY, et al.,

Defendants.

PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER ON NOTICE AND PRELIMINARY INJUNCTION

REQUEST FOR IMMEDIATE RELIEF

Introduction

Plaintiff filed this action on March 11, 2026. Nineteen days later, Northeastern University barred her registration. Sixty-five days after filing, it sent her account to collections. On September 21, 2026, she disputed every charge and named this action in writing.

On October 20, 2026, Plaintiff answered the Recommended Decision and asked this Court for leave to plead the hold as retaliation. At 11:44 the next morning, Northeastern denied the programme extension her approved medical reduced course load made necessary, citing only the hold. That afternoon, it answered her dispute with a rule written for federal aid and sent it to a student who funds her studies outside federal aid. Each time Plaintiff turned to this Court, Northeastern answered through her account.

Plaintiff did not drift into delay. Northeastern's conduct moved her finish line from December 2025 to December 2027, and she now has only three classes left to earn her degree. (Decl. ¶ 2; Proposed Third Am. Compl. ¶ 14.) Spring 2027 registration opens on November 9, 2026.

Plaintiff asks the Court to stop Northeastern from using the hold against her registration and her extension while this case proceeds. Northeastern keeps every remedy the law gives it on any charge it proves.

<u>Relief requested</u>

Plaintiff seeks relief against Northeastern University alone. In this motion, "the disputed balance" means the $18,841 balance Northeastern reported on October 21, 2026, and "the hold" means any financial restriction based on that balance or on the same underlying charges, under any name or code. Plaintiff requests:

1. A temporary restraining order, entered on notice and effective on entry, for fourteen days unless the Court sooner modifies it or replaces it with a preliminary injunction, directing Northeastern University to permit Plaintiff to register for Spring 2027 courses for which she meets every requirement other than the disputed balance or the hold, and to keep that registration in place for the life of the order; and enjoining Northeastern from treating the disputed balance or the hold as a bar to the programme extension through December 2027 that Plaintiff's academic department approved.

2. An order directing Northeastern, within seven days of entry, to complete the extension without regard to the hold, or to identify in writing to Plaintiff and the Court any other unmet requirement, with its basis.

3. A preliminary injunction, heard within the fourteen-day period and continuing pending final judgment, directing Northeastern to permit Plaintiff to register for Spring 2027 and Fall 2027 courses for which she meets every requirement other than the disputed balance or the hold, to keep those registrations in place, and to continue the relief in paragraph 2 as to the extension.

4. A provision that every other academic and administrative requirement continues to apply, and that the validity and amount of every charge, and every claim and defence of both parties concerning the disputed balance, remain for later determination.

5. An order directing the Clerk to issue a summons for Northeastern and the United States Marshal to serve it under Rule 4(c)(3), and, to the extent required, extending the time for service under Rule 4(m).

6. An expedited schedule: a seven-day response period under Local Rule 7(b), and a shortened hearing schedule under Rule 6(c)(1)(C), with declaration deadlines set under Rule 6(c)(2).

7. Security set at zero.

<u>Statement of facts</u>

The facts rest on the exhibits and on the Declaration of Jane Doe ("Decl."), which authenticates them.

A. The accommodation Northeastern approved

On December 2, 2024, Plaintiff sustained a traumatic brain injury. (Decl. ¶ 3.) Her treating neurologist prescribed a medical reduced course load, and Northeastern approved it for Fall 2025, Spring 2026, and Fall 2026. (Decl. ¶ 4.) On May 29, 2026, her academic department approved a programme extension through December 2027, citing "[d]ocumented illnesses" and that she "[h]as been approved for an RCL for multiple terms." (Ex. A.) The extension takes effect once the Office of Global Services ("OGS") completes it. (Decl. ¶ 5.) Two of her three remaining classes sit in Spring 2027. The last sits in Fall 2027. (Decl. ¶ 6.)

B. One office, two answers

Plaintiff asked Northeastern to apply the disability tuition adjustment. On November 10, 2025, its Director of Disability Access Services, Kyle Droz, confirmed the policy in writing: "[t]uition/fee adjustments may apply where a student receiving approved accommodations has a reduced courseload . . . ." Plaintiff holds approved reduced course loads for three terms. She met the condition Northeastern itself named. The same day, Northeastern told her twice that her reduced load had already lowered her tuition. Mr. Droz wrote that her "tuition already reflects your reduced courseload." Student Financial Services wrote that her "tuition was automatically reduced due to your reduced courseload." On August 13, 2026, Student Financial Services wrote that her reduced course load "did not reduce tuition charges." (Decl. ¶ 8.) The same office reversed itself. Northeastern enforces one ledger, holds both answers, and withholds the calculation behind them. (Id.)

Every term before Spring 2026 cleared. The disputed balance begins with Spring 2026, the term in which Plaintiff filed this action. (Decl. ¶ 9.)

C. Notice to the General Counsel

On January 12, 2026, Plaintiff emailed Northeastern a Notice of Cease and Desist, copied to its Senior Vice President and General Counsel, its Risk Services, Compliance, and Disability Access Services offices, and its Office for University Equity and Compliance. The Notice identified her as a disabled student under active neurological treatment, invoked the ADA and Section 504, and demanded that Northeastern cease the nefarious and retaliatory conduct this action now challenges. (Decl. ¶ 10.) Two months later, on March 11, 2026, she filed this action. (ECF No. 1.)

D. The hold, the collections transfer, and the dispute

Nineteen days after Plaintiff sued, on March 30, 2026, Northeastern imposed a financial registration bar. On May 15, 2026, it transferred her account to a collections servicer, whose notice warned that the past-due status "may prevent you from taking advantage of some of your school's institutional services." (Ex. D; Decl. ¶ 12.) On September 14 and 17, 2026, Northeastern confirmed that the hold stands until she pays. (Decl. ¶ 12.)

On September 21, 2026, Plaintiff submitted through Northeastern's portal a "Special Financial Circumstances Appeal and Formal Dispute of $26,529.00," disputing every charge on her account. It identified this action by its March 11, 2026 filing date, demanded the disability tuition adjustment for all three terms, and asked for a decision by October 20, 2026. (Decl. ¶ 13.) The next day was the deadline to drop courses without penalty. The hold blocked Plaintiff from dropping a course she had never attended, and her academic adviser confirmed that day that she could not process the drop because of the hold. (Ex. C; Decl. ¶ 14.) Thirty days of silence followed.

E. October 20 and 21, 2026

On October 20, 2026, Plaintiff filed her Objection to the Recommended Decision and her motion for leave to file a Third Amended Complaint that pleads the March 30 bar and the May 15 transfer as retaliation for this action. (Proposed Third Am. Compl. ¶¶ 107–110, 144.) She had already submitted to OGS the documentation its extension process requires. (Decl. ¶ 7.) At 11:44 a.m. the next day, OGS wrote: "I'm moving forward with denying your program extension request with OGS at this time, as you still have a hold on your student account." (Ex. B.) One obstacle, named in writing: the hold.

Northeastern's own extension form names what an extension requires, including compelling medical reasons and proof of funds. Plaintiff met them. A student-account hold appears nowhere on the form. (Ex. A.) OGS invited her to resubmit once she can "meet all eligibility requirements." (Ex. B.) The only requirement OGS named is the hold. Northeastern holds the key to the requirement it says she lacks.

At 1:42 p.m., Student Financial Services answered her dispute: "Appeals for Special & Unusual Circumstances are not available to international graduate students." It named its rule: those appeals belong to students "eligible for U.S. Federal Student Aid" with a FAFSA "on record." (Ex. C.) Plaintiff funds her studies entirely outside the federal aid system. (Decl. ¶ 1.) Student Financial Services answered a dispute over university charges with a federal-aid eligibility rule, addressed to a student with zero FAFSA on record. It answered the appeal in her title and walked past the dispute.

The same message reversed the $7,668 charge for the course the hold had kept Plaintiff from dropping and reported: "your balance is $18,841." (Ex. C.) The message that declared review unavailable corrected the account by $7,668 without any. The account stood at $26,529 before the

reversal. (Decl. ¶ 9.) Northeastern's own figures yield $18,861. For thirty days, the balance the hold enforced carried a charge for a course the hold itself kept her from dropping.

F. The questions Northeastern sits on

On October 26, 2026, Plaintiff rejected the resolution. She wrote that the October 21 response "leaves my September 21, 2026 dispute undecided, so the dispute remains open in full." She drew the line herself: "Federal law draws that line. Northeastern, however, drew no such line when it recruited me." She asked: "What written rule or policy denies an international graduate student any review of a disputed balance?" She asked: "Is that $20 the disability tuition adjustment for three terms of medically reduced course load?" She offered a path: "A workable solution lets my programme extension and my Spring 2027 registration proceed while we resolve this dispute." (Ex. C.) She asked for an answer by 5 p.m. that day. Northeastern has stayed silent since, and the hold stands. (Decl. ¶ 15.) Spring 2027 registration opens on November 9, 2026. (Decl. ¶ 16.)

Legal standard

A party seeking preliminary relief shows a likelihood of success, a likelihood of irreparable harm, a balance of equities in her favour, and service of the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Likelihood of success weighs most heavily. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). The same factors govern a temporary restraining order. Paragraphs 1 and 2 require affirmative action. Mandatory relief issues where "the exigencies of the situation demand such relief," measured under the same four factors. Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 41 (1st Cir. 2010). A registration opening seven days away, and an extension denied in writing, supply those exigencies.

Argument

I. Plaintiff is likely to succeed on her retaliation claim

The operative Second Amended Complaint pleads the post-filing hold and the collections transfer. (ECF No. 28 ¶¶ 78, 80.) The Recommended Decision recites both at page 12 and analyses retaliation only as to earlier conduct. (ECF No. 31.) Plaintiff's Objection, her motion to enlarge time under Rule 6(b)(1)(B), and her motion for leave under Rules 15(a)(2) and 15(d), all filed on October 20, 2026, remain pending. The proposed Third Amended Complaint repleads the hold and the transfer. (Proposed Third Am. Compl. ¶¶ 107–110.) The acts of October 21, 2026 postdate every pleading and continue the same course of conduct. The Court holds authority to preserve the subject of the litigation while it decides these motions.

The ADA bars retaliation against any individual who has made a charge or participated in a proceeding under the Act. 42 U.S.C. § 12203(a). Section 504 carries the same bar. 34 C.F.R. § 100.7(e), incorporated by 34 C.F.R. § 104.61. The claim requires protected conduct, adverse action, and a causal link. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012). Northeastern operates a postgraduate private school, a public accommodation. 42 U.S.C. § 12181(7)(J). Title III supplies the remedy this motion seeks: injunctive relief against retaliation by a public accommodation. 42 U.S.C. §§ 12203(c), 12188(a)(1). Plaintiff carries each element.

Her protected conduct is a matter of record: her written invocation of the ADA and Section 504 to Northeastern's General Counsel, this action, and her filings of October 20, 2026. (Facts C, E; Proposed Third Am. Compl. ¶¶ 143, 145.)

An adverse action is conduct significant enough to deter a reasonable person from pressing a claim of discrimination. Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 50 (1st Cir. 2015). The

Supreme Court frames the same test in the employment setting: an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). It applies with equal force to a student. A hold that bars a student from registering, and a denied extension, deter any reasonable student.

Northeastern knew of Plaintiff's disability-rights assertion through the January 12 notice to its General Counsel. By September 21, 2026, it held written notice of this action in her own dispute. It maintained the hold after that notice and, on October 21, used it to deny her extension. (Facts C to E.) The March 30 bar followed the filing by nineteen days, and the May 15 collections transfer by sixty-five. (Facts D.)

Northeastern approved the medical reduced course load, and that approval made the extension necessary. One office certified the medical need. Another blocked it over a disputed debt, on a ground its own extension form omits. (Facts A, E.) Northeastern now penalises the very time its own accommodation required, justified by a balance its own office explained both ways and calculates for no one. (Facts B.) It met an institutional dispute with a FAFSA rule. (Facts E.) Northeastern enforces a balance it refuses to explain against a degree it already approved.

## II. Plaintiff faces irreparable harm

Spring 2027 is the term that carries two of Plaintiff's three remaining classes. (Facts A.) The hold bars her from registering for it. (Decl. ¶ 16.) The same hold has already denied the extension that reaches her final class in Fall 2027. (Facts E.) Together, they sever the approved plan where two-thirds of it remains. Left in place, the same hold reaches Fall 2027 and the final class next. A lost term and a severed plan lie beyond the reach of money damages.

Every route around the hold runs through Northeastern. Plaintiff stands outside federal aid and off-campus work. (Decl. ¶ 1.) She challenges every charge in this action. (Decl. ¶ 13; Proposed Third Am. Compl. ¶¶ 110, 295.) Northeastern's price for the extension is payment of the very charges Plaintiff challenges in this action. That price is the retaliation.

## III. The balance of equities favours Plaintiff

Northeastern bears a limited risk. Registration adds Spring 2027 charges, and the relief reserves every claim and defence on every charge. (Relief ¶ 4.) Plaintiff, by contrast, stands to lose the heart of her remaining degree. Northeastern reversed $7,668 in a single afternoon. It can suspend one hold while this Court decides the case.

## IV. Relief serves the public interest

The public interest favours enforcement of federal disability and anti-retaliation protections. Relief here keeps a disputed institutional balance from overriding an accommodation the institution granted, while a court decides the dispute.

## V. Security

Rule 65(c) leaves the amount of security to the Court's discretion. The Court has already found that Plaintiff cannot prepay the costs of this action. (ECF No. 10.) The relief reserves every charge. (Relief ¶ 4.) Plaintiff asks the Court to set security at zero.

Notice and request for expedited consideration

Plaintiff seeks relief on notice. Counsel for Northeastern University has yet to appear. Service on Northeastern awaits the Court's screening under 28 U.S.C. § 1915(e)(2). Plaintiff asks the Court to direct service now, under Rule 4(c)(3), as set out in Relief ¶ 5. On November 2, 2026, Plaintiff emailed this motion, her declaration, Exhibits A through D, and the proposed order to Northeastern's Office of the General Counsel, and sent them by certified mail to 360 Huntington Avenue, Boston, MA 02115. On docketing, CM/ECF notifies counsel of record for Defendants Redfern Properties LLC and Amber Dorcus under Rule 5. Exhibit E records these notice efforts. Plaintiff asks for the temporary order to take effect on entry, before the November 9, 2026 registration opening, with the response, briefing, and hearing set out in Relief ¶ 6 to follow within the order's fourteen days. As an accommodation of her disability, she asks that any hearing proceed by videoconference.

Conclusion

Plaintiff requests that the Court grant the relief set out above.

Dated: November 2, 2026

Respectfully submitted,

Jane Doe, Plaintiff, pro se

CERTIFICATE OF SERVICE

I certify that on November 2, 2026, I sent this motion, my declaration, Exhibits A through D, and the proposed order to Northeastern University's Office of the General Counsel by email and by certified mail to 360 Huntington Avenue, Boston, MA 02115, and submitted them, with Exhibit G, to the Clerk for filing. On docketing, the Court's CM/ECF system will notify counsel of record for Defendants Redfern Properties LLC and Amber Dorcus.

Jane Doe